ANDREW J. THOMPSON v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Division One, February 20, 1917.

1. **NEW TRIAL: Change in Judge.** If after a motion for a new trial, charging that the verdict is against the weight of the evidence, is filed, the judge who tried the case is succeeded by another, his successor has power to overrule the motion.

2. **NEGLIGENCE: Methods of Locking Switches: Conflicting Evidence.** Where the evidence as to the custom of railroads in locking switches is conflicting, there being no express rule on the subject, it will not be held as a matter of law that the method employed by defendant was that adopted and practiced by railroads generally, but the question is one of fact for the jury to determine.

3. ———: **Looking for Lever in Proper Notch: Contributory Negligence.** The switchman's testimony that as the car on which he was rid-

ing passed he looked at the switch points and they were in such position against the rails as to show the switch was set for the side track, and that they could not have been in the position in which they were unless the lever was down in the notch in the switch-stand, is evidence that the switch was set for the side track and that the lever was in the proper notch as the car on which he was riding approached the switch; and it was for the jury to determine whether, in failing to see and know that the lever was set in the proper notch, he was guilty of negligence contributing to the derailment caused by the car entering upon the wrong track at the switch.

4. ———: **Riding on Main-Line Side of Train.** Under the circumstances of this case, whether it was contributory negligence for the switchman, riding on a car about to pick up another on a side track, to place himself upon the side of the car next to the main line, on which the train was standing, with which his car collided when the switch broke and it entered upon the main line, was a question for the jury.

5. ———: **No Switch Lock.** Likewise, under the circumstances, whether the railroad company, in view of the evidence tending to prove the likelihood of the lever jolting out of the notch at the switch-stand, was negligent in maintaining the switch without a lock, and in running its cars over it at a rate of ten or twelve miles per hour, was a question for the jury.

6. ———: **Instruction: Absolute Safety.** An instruction which required the jury to find that the switch-stand where the car left the track was negligently maintained without a lock and that such switch-stand without a lock was not a reasonably safe place —if another instruction defined negligence as "a want of ordinary care" and then properly defined those words—did not require a verdict for the injured switchman unless the switch was absolutely safe.

7. ———: ———: **No Requirement of Conformity to Custom: Non-Direction.** Sufficient proof of usage in the matter of locking a switch and of conformity to custom, may be said to rebut the idea of negligence in a proper case; and an instruction which excludes the idea that the jury should consider the evidence tending to show the railroad company's practice in leaving the switch unlocked conformed to the usage of well managed lines, would be erroneous; but an instruction which contains no particular direction, but does require a finding of negligence, does not exclude the consideration of such evidence, but amounts only to non-direction, which may be supplied or covered by instructions for defendant.

8. ———: ———: **Assumption of Risks.** If the rules of the railroad company pertain solely to main-line switches and do not require the switch of a cross-over track to be locked, the switchman does not assume the risk of injury resulting from a failure to lock the cross-over switch.

Appeal from Mississippi Circuit Court.—*Hon. C. B. Faris*, Judge.

AFFIRMED.

*W. F. Evans* and *W. J. Orr* for appellant; *Boone & Lee*, of counsel.

(1) There was no proof of any breach of duty on the part of the company, because the plaintiff's evidence shows that the methods complained of were those adopted and practiced by railroads generally. Chismer v. Tel. Co., 194 Mo. 189; Brand v. Car Co., 213 Mo. 698; Beckman v. Brewing Co., 98 Mo. App. 555; Railroad v. Walker, 172 Fed. 351; Tuttle v. Railroad, 122 U. S. 189. (2) The master is not required to take precautions against the consequences of the possible negligence of his own employees, nor is he required to anticipate such negligence, but may conduct his business upon the assumption that his servants will exercise the proper degree of care, and when he furnishes appliances and places which are reasonably safe as intended to be used when due care is exercised by those using them he has done his duty. Grattis v. Railroad, 153 Mo. 380; Bridge Co. v. Seeds, 144 Fed. 609; Railroad v. Walker, 172 Fed. 351; Pollock on Torts, 36. (3) Instruction "A" is erroneous in that it permits the jury to determine the law instead of the facts. It permits the jury to say what constitutes actionable negligence. And it nowhere furnishes a legal test as to actionable negligence on the facts in the case. (4) It is also erroneous in that it permits the jury to substitute conditions for negligence. It permits the jury to say whether the switch without a lock was not reasonably safe "under the circumstances," but does not tell them what circumstances may be legally considered, and absolutely ignores the "ordinary usage of the business" as the test. Authorities under point 1; Bennett v. Lumber Co., 116 Mo. App. 699; Dunn v. Nicholson, 117 Mo. 374. (5) The defendant has never had the benefit of the right accorded all litigants to have the weight of the evidence passed upon by the trial court, because he re-

signed before the motion for a new trial was passed upon. Mill Co. v. Sugg, 142 Mo. 368; McCarty v. Transit Co., 192 Mo. 396. (6) The weight and preponderance of the evidence being clearly against the verdict, defendant is deprived of the right guaranteed to all litigants to have this question determined by the only person permitted to do so, by reason of a circumstance over which it had no control, because no other court under the law is vested with the discretion to grant a new trial except the judge who tried the case. And defendant has never had the benefit of that discretion in this case. (7) Plaintiff's instruction "A" attempts to cover the entire case and cannot be aided by correct instructions given for the defendant in conflict with it. Clark v. Hammerle, 27 Mo. 55; Budd v. Hoffheimer, 52 Mo. 297; State v. Lentz, 184 Mo. 223; Barth v. Loy, 82 Mo. App. 601; Glasscock v. Swofford Bros. Co., 105 Mo. App. 365.

*David W. Hill* and *Ernest A. Green* for respondent; *Russell & Joslyn,* of counsel.

(1) The trial court did not err in overruling the defendant's demurrer to the evidence. There was such a showing of negligence on the part of the defendant as required the submission of the case to a jury. Withers v. Railroad, 151 Mo. App. 488; St. Clair v. Railroad, 122 Mo. App. 519; Kremer v. Eagle Mfg. Co., 120 Mo. App. 247; Lee v. Railroad, 112 Mo. App. 372; Dutro v. St. Ry. Co., 111 Mo. App. 258; Charlton v. Railroad, 200 Mo. 413; Koerner v. St. Louis Car Co., 209 Mo. 157; Berry v. Railroad, 214 Mo. 593. (2) Instruction "A" given to the jury at the request of the plaintiff was a correct statement of the law, and required the jury to find every essential element in the plaintiff's case before it authorized a verdict for the plaintiff. Crane v. Railroad, 87 Mo. 595; Campbell v. Stave & Lbr. Co., 146 Mo. App. 689; Johnson v. Railroad, 96 Mo. 340; Deschner v. Railroad, 200 Mo. 310. (3) Instruction "A" is not in conflict with any correct instruction given to the jury at the request of the defendant. Bliesner v. Distilling Co., 174 Mo. App. 139; Craig v. United Rys. Co., 175 Mo. App.

616; Farmer v. Railway Co., 178 Mo. App. 579; Johnson
v. Traction Co., 176 Mo. App. 174; Spaulding v. Lumber
& Mining Co., 183 Mo. App. 656; Budd v. Hoffheimer,
52 Mo. 303; Wood v. Kelly, 82 Mo. App. 601; Pendegrass
v. St. Louis & S. F. Ry. Co., 179 Mo. App. 517; Sager v.
Mining Co., 178 Mo. App. 503.    (4) Judge Finch, the
successor in office to Judge Faris, who tried the case, was
expressly authorized by law to pass upon the motion for
a new trial.   There was no error in his so doing, even if
this assignment of error could be reviewed.   Sec. 2032,
R. S. 1909; State ex rel. v. Perkins, 139 Mo. 117; Fel-
hauer v. City, 178 Mo. 635; Bailey v. Coe, 106 Mo. App.
653; Glavis v. Wood, 78 Mo. App. 35; Richardson v.
Mercantile Assn., 156 Mo. 407.    (5) Defendant's motion
for a new trial does not assign as a ground thereof that
the verdict was against the weight of the evidence.  Con-
sequently, that matter could not have been reviewed
by the trial court.   But in any event, the verdict is
fully supported by the great weight of the evidence.
Kansas City v. Forsee, 168 Mo. App. 213; Bohn v.
Lucks, 165 Mo. App. 701; Compressed Air Co. v. Fulton,
166 Mo. App. 11; Loftus v. St. Ry. Co., 220 Mo. 479;
Honea v. Railroad, 245 Mo. 621.

BLAIR, J.—Respondent was a brakeman employed
by appellant and was injured in a derailment.   He re-
covered judgment in the Mississippi Circuit Court, and
this appeal followed.

Appellant's tracks at Delta run east and west.   On
the north side of the main line is a side track about
one-third of a mile in length and a little nearer the main
line track than in the usual construction.   At each end
it connects with the main line by switches provided with
locks.   Nearly two hundred feet from the west end of
this sidetrack is what is called a cross-over or inter-
mediate track.   It leads from the main line to the side
track.   Its west end connects with the side track and its
east end with the main line.   At the time respondent was
injured an east-bound train on which he was acting as
brakeman had stopped at Delta.   One car near the rear

of the train was "spotted" at the station, which was just west of the west end of the side track. The train, nearly as long as the side track, extended east along the main line to a point several hundred feet beyond the east or main line switch of the cross-over. An order was received to "pick up" a car standing upon the side track, and respondent uncoupled the engine and proceeded with it to the switch at the east end of the side track. This switch he unlocked and opened, and the engine moved westward upon the side track. On this track there were three bunk cars, left for employees, and farther west was the car sought. There is evidence this car was standing west of the side track connection with the cross-over, and other evidence that it stood about opposite the side track cross-over switch. The engine backed westward along the side track and was coupled to the first of the bunk cars and then propelled the three westward until the car sought was reached, respondent riding upon the south side of the bunk car fartherest from the engine and upon the side next to the main line. The side track cross-over switch-stand was on the north side of the side track. The rear bunk car was coupled to the car ordered to be "picked up" and the coupling made by impact. Respondent testified the first attempt failed, and that the car was driven west "into the main line train." There was evidence tending to show this car was, when the coupling was finally made, considerably over a hundred feet west of the cross-over switch-stand on the side track. There was evidence to the contrary. The engine, drawing the four cars, then started eastward for the main line, and respondent began to climb the ladder upon the south side of the rear car, that being on the side next the main line and nearest the cars in the train standing on the main line track. When the car on which respondent was riding reached the cross-over switch, instead of continuing along the side track, along which the engine was proceeding, it started down the cross-over, and struck a car in the train on the main line, catching respondent between the tops of the colliding cars and severely injuring him. There

was evidence tending to show that the engine backed some of the cars past the switch connecting the cross-over track with the side track, and that that switch was uninjured, but that it could not have been so had cars been backed over it while it was set for the cross-over track; also to show that some of the cars had, after the engine started east, passed over the switch points and continued eastwardly upon the side track; that, at the time the car on which respondent was riding reached the cross-over switch it was moving ten or twelve miles per hour; there was evidence that unless the lever used to turn the cross-over switch was in the notch provided to hold it, the jolting of cars passing over the switch might throw the switch, and evidence that the lever on this particular switch would be jolted out of such notch by cars passing over the switch; that this was its condition after the injury to respondent, and that the switch was then in the condition it was in at the time of the accident and in which it had been long prior thereto. It was shown the switch-stand had a place for a lock and that a lock could have been supplied for forty cents, and would, if in use and in place, have prevented the injury; but that such lock was not in use and had never been used on that switch. There was in evidence a company rule requiring main line switches to be locked, but no rule was offered which had any reference to cross-over switches at the end connecting with a side track. There was evidence both ways on the question whether well managed railroads customarily maintained locks on such switches.

The switch-stand targets were rusty and their colors nearly obliterated, but differences in shape were designed to indicate whether the switch was set for the cross-over or the side track. Respondent testified he rode upon the side of the car next the main line, because the engineer was upon the right hand side of the engine and signals could be given him directly only on that side; that this was in conformity to the rule or, at least, regular custom, in backing, when the track was so the engine could be seen from the right hand side of the car; he said he did not look at the switch, as the engine backed down, but

did look, as was his duty, at the switch points and they were lined for the side track; and that they could not have been as he saw they were unless the switch lever was in the notch.

Respondent's position is that the switch was thrown by the jolting of the cars ahead of the one he was riding on and that it resulted from the negligent speed of the train and the absence of a lock on the switch. Appellant contends there was no negligence; that respondent assumed the risk, and that his injury resulted from his contributory negligence. Other facts may be stated in the course of the opinion.

I. This case was tried before Judge. C. B. Faris, now of this court. While the motion for new trial was pending, he was succeeded by Judge Finch. Judge Finch overruled the motion. Appellant now urges he had no power to do so. The substance of the argument New Trial. advanced is that the motion assailed the verdict as against the weight of the evidence; that this question called for an exercise, of discretion by the judge, and that the trial judge, alone, was in position to exercise such discretion in ruling upon it. Both divisions of this court have held the contrary. [State ex rel. v. Perkins, 139 Mo. l. c. 117, 118; Fehlhauer v. St. Louis, 178 Mo. l. c. 653; Richardson v. Agr. & Mec. Assn., 156 Mo. l. c. 412, 413; also Glaves v. Wood, 78 Mo. App. 351.] Appellant relies on St. Francis Mill Co. v. Sugg, 142 Mo. 364. That case applied the rule in force prior to the amendment of the statute discussed in State ex rel. v. Perkins, supra. The motion considered was one filed prior to the amendment. The third paragraph of the syllabus indicates the ruling actually made. Defendant's right, in that case, under the rule in force, accrued prior to the amendment. It was not a mere matter of procedure. It was then a right to a new trial. That case is no authority in this.

II. Appellant contends the case should not have gone to the jury.

(a)   The first ground advanced is "that the methods complained of were those adopted and practiced by railroads generally." The record does not show this to be true as a matter of law. When such usage is re-

Common Usage.

lied on it must be proved. The evidence in this case on this issue was conflicting, and it was for the jury to determine the fact. [Yost v. Rairoad, 245 Mo. 1. c. 244, 245.] In Trebbe v. American Steel Foundries, 185 S. W. 1. c. 182, this court, consider-ing this' question in connection with Chrismer v. Bell Tel. Co., 194 Mo. 1. c. 208, 209 (a case upon which appel-lant relies), said: "Neither that case nor any cited in it, however, is authority for any rule that a court can assume the existence of a common usage, in the face of a conflict of evidence on the question running through all the evidence offered in that connection." A question of fact as to whether an asserted common usage actually existed is to be submitted to the jury like any other.

(b)   Another ground upon which it is urged the case should have been taken from the jury is this: there was evidence tending to show the accident might have happened as it did if the switch lever on the side track

Lever in Notch.

cross-over switch-stand had not been placed in the notch prepared in the stand to hold it and was not in the notch when the cars were moving over the switch; that this condition would have rendered the switch so insecure that when the engine started west the switch might have been jolted around or the switch points pressed over by the flanges on the wheels, so that the switch would have been thus set for the cross-over and the accident would have resulted; that it was re-spondent's duty to see that the switch lever was set in the proper notch and that he did not do so; therefore, that there was a showing of a probable cause for the in-jury for which respondent's contributory negligence was responsible and, it is argued, we must apply the rule that when there is evidence tending to prove two causes of injury, for one of which defendant is liable and for one of which it is not, plaintiff must fail in the absence of a

showing that his injury came from the former; and that this rule requires judgment for appellant in this case.

Respondent does admit he did not look at the lever, but he testifies, in substance, he looked at the switch points and they were in such position against the rails as to show the switch was set for the side track, and that they could not have been in the position they were in unless the lever was down in the notch. On cross-examination he gave his reasons. This was evidence the switch was set for the side track respondent was using, and that the lever was in the proper notch as the car on which respondent was riding approached the switch. There was evidence the switch was not set for the cross-over, as well as evidence to the contrary. There was evidence some of the cars were backed over the switch in order to reach the car to be picked up; that these cars would have broken the switch had they been backed over it while it was set for the cross-over; and that the switch was not broken. It was for the jury to say whether they would believe respondent's testimony as to the lever being in the notch when the switch points were in the position he testified they were and it was for them to determine, under proper instructions, whether the cause of injury was proved for which appellant was responsible, i. e. whether the preponderance of the evidence pointed to such cause.

(c)   Whether, in the circumstances, it was contributory negligence for respondent to place himself upon the side of the car next the main line on which the train was standing was a question for the jury, at most.

(d)   In the circumstances it was a question for the jury whether appellant was negligent, in view of the evidence tending to prove the likelihood of the lever jolting out of the notch, in maintaining the switch without a lock and running its cars over it at ten or 'twelve miles per hour.

(e)   It is quite clear the evidence did not establish as a matter of law that respondent assumed the risk of using the switch.

III. It is most earnestly contended instruction "A," given for respondent, was erroneous. That instruction reads thus:

"The court instructs the jury that if you believe and find from the evidence in this cause that on, and for some time prior to, the 6th day of May, 1909, the defendant carelessly and negligently furnished

*Instruction.*

and maintained a switch-stand without a lock therefor, at a point on its passing track, at the town of Delta, where its cross-over track connected said passing side track with defendant's main line at that point, and that such switch-stand, without a lock, was not a reasonably safe appliance at said place and under the facts and circumstances, and that on the 6th day of May, 1909, the defendant, by its engineer, carelessly and negligently ran a train of cars along and upon said passing track at a rate of speed that was not reasonably safe to defendant's other empoyees working on and around said train, under the existing conditions; and that as a result of such speed of the train and as a result of the carelessness and negligence of the defendant in failing to provide and maintain a lock for such switch-stand at the west end of said cross-over track, and if you find that such act was under the circumstances negligent, one of defendant's cars, then being drawn by defendant's locomotive engine, then being operated by defendant, its servants and employees, was thereby and thus caused to suddenly leave said passing track and to go upon said cross-over track and to suddenly and violently collide with defendant's train of cars upon the main line, thereby and thus catching and crushing plaintiff between the car upon which he was riding and a car upon the main line aforesaid, while he was in the line of his duty as a brakeman for the defendant, thereby and thus wounding his left hip, back, bladder, testicle and urethra, and depriving him of any portion of his earnings; and that the danger incident to the operation of an engine and train of cars upon said passing track by said switch-stand without a lock was not so apparent or obvious as to cause a reason-

270 Mo.—7

ably prudent person to not operate them; and that the plaintiff, when injured was exercising such care as a person of ordinary prudence would have exercised under the same or similar circumstances, then and in that event your verdict in this cause must be for the plaintiff, Andrew J. Thompson.''

(a)  It is insisted that the instruction required a verdict for respondent unless appellant's switch was absolutely safe, whereas, it is said, the rule is that it is the master's duty to use ordinary care to provide reasonably safe places and appliances. The instruction, in this connection, required the jury to find (1) that the switch-stand was negligently maintained without a lock, and (2) that such switch-stand, without a lock, was not a reasonably safe appliance. Instruction ''D;'' given for respondent, defined negligence as ''a want of ordinary care,'' and then defined ordinary care. No objection is made to these definitions. Substituting for the word ''negligently,'' where it first appears in Instruction ''A,'' the definition in Instruction ''D,'' it appears the meaning of this part of the instruction is the legal equivalent of the formula appellant urges should have been used.

(b)  It is said the legal test of negligence in the use of a given switch is the usage in the railroad business and that the instruction excludes this and leaves it to conjecture. ''It is true . . . conformity to custom'' in the business ''is not evidence of negligence, but departure from it is'' (Yost v. Railroad, supra, l. c. 245), and let it be conceded that had Instruction ''A'' excluded the idea that the jury should consider the evidence tending to show appellant's practice in leaving this switch unlocked, in all the circumstances, conformed to the usage on well managed lines, it would have been erroneous. Sufficient proof of such usage may be said to rebut the idea of negligence in a proper case. Instruction ''A'' did not exclude the consideration of that evidence. With respect to it the instruction contains no particular direction. It does, generally, require a finding of negligence. This non-direction was fully covered by appellant's instructions which were strong and clear.

Had they failed to cover the matter fully, appellant could not complain. Upon a like question, this court in Trebbe v. American Steel Foundries Co., 185 S. W. l. c. 183, said:

"The instruction concerning the omission of the safety block or safety appliance of some kind required the jury, before finding for respondent, to find the facts of the occurrence in accordance with the tendency of the evidence supporting respondent's view, and then to find that there was a failure to place a safety device upon the appliance, and then to find that such omission constituted negligence, want of ordinary care. Other instructions defined ordinary care in a manner not objected to, and, at appellant's instance, also directed the jury that if it was not customary to equip air hoist beams with safety blocks, and if appellant had no reason, in the exercise of ordinary care, to anticipate that the lack of a safety block was dangerous, and if 'the accident in question here brought to defendant's attention for the first time the desirability of such a safety device,' then there was no negligence in failing to supply the safety block. This meets substantially the objection that respondent's instruction permitted a finding for him though safety blocks were previously unknown."

The same principle answers the contention in this case.

(c) The insistence that the instruction requires the master to anticipate and provide against the negligence of the servant is not tenable. It assumes respondent's contributory negligence. That was an issue for the jury, and the instruction even required a finding of respondent's freedom from contributory negligence before a verdict for him could be rendered.

*Anticipating Injury.*

(d) The criticism of Instruction "A" based upon the idea that the rules of the company "did not require the switch to be locked" and that Thompson agreed to

familiarize himself with the rules and, therefore, so

Assumption
of Risks.
continuing in service must be held to have assumed the risk, is untenable. No rule was offered relating to cross-over switches so far as concerned those at the side track end. Rule 104 pertained solely to main line switches. Instruction "A" left open, sufficiently, the question of assumption of risk, and appellant's instruction given secured for it the full benefit of the principle for which it contends, covering specifically the idea now advanced in criticism of the instruction.

(e) With respect to respondent's contributory negligence, if any, appellant secured an instruction which

Contributory
Negligence.
gave it, at least, the benefit of every principle which it was entitled to have placed before the jury.

(f) There is no conflict of instructions of which appellant can complain. Instruction "A" is the only instruction assailed. The grounds upon which it is argued

Conflict.
conflict appears are, generally, the same put forward in support of the contention that the demurrer to the evidence should have been sustained. Also they depend, to some extent, upon a construction of the evidence we do not think the record sustains.

The judgment is affirmed. All concur, *Bond, P. J.,* in result.